helped us with our work before, and we're very grateful that he continues to be willing to do so and to visit with us. He's probably sat in a number of cities now within our circuit, and I know I've had the pleasure of sitting with him before, and it's been great to have him here with us this week. We've enjoyed his accolades, too, haven't we? That's right. We only have two appeals to hear this morning. We know what your cases are about. We've read your briefs and the authority cited in your briefs and looked at at least portions of the records, so you should feel free in the limited time available to you to get straight to the heart of your argument. We're probably going to have some questions for you, and you should pay attention, though, to the traffic light system and don't treat the red light as aspirational. When it shines, it's time to wrap up your argument. If you're answering a question from the court, of course, you can finish your answer, but do be respectful of the court's time. So we will begin this morning with United States v. Carthen. Mr. Matthews. May it please the court. Your Honor, I have the pleasure of representing Scotty Grossi in this case. Mr. Grossi, as the court's aware, was convicted of seven counts of conspiracy to commit a Hobbs Act robbery, and then three specific counts for the Hobbs Act robbery, and then the three counts for brandishing a weapon during the Hobbs Act robbery. The issues that were brought up and that are on appeal, the first one being the specific contradiction doctrine, which I would expect the court is probably more interested in hearing about. That's the one I'm most interested in hearing about. It does seem like the amendment to it would nevertheless be, and so perhaps the district court would have misunderstood that legal point, but that kind of impeachment would nevertheless be subject to the strictures of Rule 403, and could be that kind of evidence, if it's really kind of confusing the issues, could be inadmissible under 403, and it may be, too, that this is a case where the evidence was so overwhelming that any legal error was harmless. So at least those are the questions I have in my mind. I can't speak for the others. Yes, sir. And to that, I do agree with the court that it appeared from reviewing the record, of course, there was another trial attorney, Mr. Ganner, who did a good job and does a good job. It appeared from the court's ruling that I don't know that she grasped his position on the specific contradiction doctrine. It's not one that regularly pops up, at least not in my number of years of practice. Well, and we've said things before the amendment to the rule that would appear to be basically foreclosed by the rule now as amended, right? And so I think in this case, Mr. Ganner's position, Mr. Grossi's position was the impeachment should have been allowed, and from the arguments of counsel before Judge DuBose, it appeared that he wasn't going to spread a whole lot into what those arguments were or what the contradictions were other than that this individual who was their co-defendant who then reached a plea agreement and testified against him that he had lied in two additional legal proceedings where he was sworn under oath to tell the truth. All right, counsel, let me ask this question because it's obvious that they did get into evidence the question that the witness was not a truthful witness. So where I go, let's assume just for purposes of argument that you're correct. You need to kind of address harmless error for me on the basis of this record that I've seen. Yes. Well, Your Honor, I think despite having impeached him by other questions, so to speak, the level of harm in this case certainly rises to where my client's rights were violated by this ruling. Well, I'm giving you that. But still, even if you look at this record and the totality of the evidence that we have before us in this matter, I'm having a hard time saying that it's not harmless. So that's what you better convince me of. Yes. I think in this context, Judge, that had this witness been shown to have lied in prior court proceedings, that further information from him would have been discredited. Well, a liar is a liar. And you were able to show that he was a liar in the proceedings that was going before the jury there. So isn't that then a credibility question for just the jury that, yeah, this guy's a liar, but we believe him? Well, I think it would have carried more weight had these two impeachment witnesses been able to come and testify on behalf of the defendant about those lies. Here's my problem, though. But in addition to everything that Judge Baldock is mentioning, there's DNA evidence linking Carthan to a crime scene, video evidence that shows the defendants at the gas station. Your client's fingerprint was found on a shotgun shell found near the scene of a robbery, and a glove with his initials was discovered at the crime scene. I mean, it seems to me that when you take all that evidence about the crime itself and the point that Judge Baldock's raising about having been able to show that he's a liar, that it really does appear to be harmless error. Yes. Well, again, I feel that the information, had that been proven or had the impeachment further been allowed, that it would have put more credence into Mr. Grossi's position. And that's kind of the reason for that. I have one additional question, if I might. In the briefing, you raised the question of bias. And in our looking, I can't find where that was raised below. And I'm getting at whether or not we review it under plain error or not. Do you concede that we would review this under plain error? Or can you point me where you raised below the issue of bias? Your Honor, if I'm not mistaken, Mr. Ganner and his arguments in the motion in limine, and I'm going from memory, but I'm pretty sure that he mentioned when he was talking to Judge DuBose, and he was telling her, Judge, this specific contradiction rule is allowed and rule 608B allows this. And he listed impeachment bias and another reason for it. And that was his reasons for the objection. And that was all that was said. There wasn't any argument made. He's just saying possible bias there. Well, anyway, I'll look at that. Thank you. Thank you, Judge. Any questions? I actually do. Can I just ask you, I wasn't, I've read a lot of briefs for this week, and I wasn't sure. With regard to your constitutional challenge to the Senate's 8th Amendment challenge to the 924C stacking, do you see that as foreclosed by 11th Circuit precedent? I hate to say yes, Your Honor. Well, you don't have to if I ask him. You don't have to. You don't have to. Okay. But if you were, you would probably point out that Raheem right now forecloses that. Sorry. Thank you, Mr. Matthews. I have to move the mic down a tad. I understand. I represent Tremaine Carthan, judges. Mr. Carthan, as was Max Clyde, convicted of derobberies. He was convicted of abrasion, foul art. He was convicted of the conspiracy. Mr. Carthan, I did not do the trial. Mr. Carthan had two attorneys prior to the trial. One of the attorneys is now a sitting state court judge, Judge Bill Lewis. And Judge Lewis actually was his first attorney. Judge Lewis represented Mr. Carthan from January to August of 16. Mr. Carthan, please. So, is this your ineffective assistance? Yes, sir. I don't see how the record's developed enough for that. It seems to me that that's an issue that could be raised in 2255. Why am I not right about that? Yes, sir. You are, Mr. Carthan, though, insistent that we raise these certain issues. All right. So, as to not face a 2255 myself, I decided to raise it. All right. It may be too late for that. I don't know. He is somewhat of a difficult client. Well, at least it'll make the resolution of that claim on 2255 easier, won't it? We're not going to prejudge it. But, you know, the problem is that as I was reviewing the record, we did present the issues that Mr. Carthan wanted us to present. As I did try to explain to Mr. Carthan, the constitutional issue was totally against him when it comes to the sentencing. And there's nothing that I can do. That's my issue four. There was nothing I can do about that. He, again, insisted that he was, that they did not prove that he, in fact, was on the scene, even though the DNA evidence is there. I agree with the justices that there were other issues there. The co-defendant did testify against them at that point. However, we also, kind of going back to the ineffective, it was pointed out to me and in the briefing that Mr. Richard Keith did a motion for judgment of acquittal at the end of the evidence, but didn't renew it at the end of the trial. We also then have that same problem when it comes to the constitutionality. Okay. So, anyway, Mr. Carthan, of course, was sentenced to 57 years. He'll be 94 when he gets out of jail, when he comes up for release. And therefore, he feels like he needed, and I did present all of his issues to this court. Okay. Thank you. Thank you. Ms. Stewart. Good morning. May it please the court, I'm Sandra Stewart and I'm here representing the United States of America. I'm going to turn first to the issue the court seems to be most interested in, which is the specific contradiction rule. Judge DeVos misunderstood that rule, didn't she? I'm not sure that she did. I understand the court's position already on that, but I think the rule as amended, it says something different from what our precedents predate that. Our precedents, I don't think, are any longer good law in view of that amendment. I do think that you can bring in extrinsic evidence to disprove other character traits, but not the character trait for truthfulness. I don't think it changed that. But that's different from a specific instance of having been untruthful about which there's been testimony. Right? I disagree. You don't see that that's different from a character of truthfulness generally? What other purpose would we be introduced to show if it is extrinsic evidence that doesn't have anything to do with the facts before the case, which, of course, Judge Pryor, you did mention that that goes to Rule 403. Yes. It's relevant evidence. Right. And I think particularly in this case, the alleged two incidences in which he lied, the first incident was at a suppression hearing. Right. And he lied about whether he asserted his right to counsel and at what time that was done. I'm always interested in rules of evidence, but what difference would it make in this case if we say there's no prejudice? I agree. I think that it is definitely harmless error. The defense attorneys on cross-examination did prove that he had a reason to lie in this case based on the fact that he had several of the charges, six of the charges dropped against him. And instead of facing the 57-year sentence, he got a 19-and-a-half-year sentence in this case. So I do think that that is true. And also, I do want to point out that the second incident they wanted to introduce evidence on, they didn't have evidence that he lied. All they had was evidence that a defendant was acquitted in a trial in which he testified. Which could mean a lot of things. Right. And I also would point out that even if he got up and he testified about lying, that's really, in some instances, is going to just be somebody's testimony against somebody else's testimony about whether that was a lie, what he said was a lie. Unless you have a finding by a judge that there was some sort of perjury going on. Otherwise, you're going to get into this, you're going to be putting on evidence and you're going to have them arguing with each other about who said what. And you have the jury determining credibility on an issue that's totally collateral to the issue before the court. But it could be, you would recognize, it could be that you have specific instances where the witness had earlier lied that was directly material to the case. I agree with that. That would be a specific incidence that would be... And that would be covered by, that would be allowed as impeachment by contradiction. Right. You're lying about some specific fact that's relevant to the case. For instance, if a witness got on the stand and he said something like, let's say a co-defendant, I never did drugs, I would never be involved in all that. And they have specific incidences where he was involved in the drug dealing at an earlier point or something of that nature. But it could also be that what his earlier misconduct was, about which he lied, was something involving lying. Right. You could get into that too. Right. I agree with Judge Breyer. The other thing I did want to point out is there is no evidence at all that bias was raised as a basis for the introduction of this evidence below. Mr. Ganter did mention the word bias. He was reading from the amendments to the Rule 203, but he doesn't bring, he didn't argue that ever. And neither did Mr. Carthen's counsel argue at any point in the trial below about bias. And even in the briefs for this court, they haven't presented any argument about why this lying and these other proceedings would have biased Mr. Martin against these two defendants. And so I think that if a clear review of the record shows that there was, that argument was never made below. Okay. And if the court doesn't have any questions. I actually do have a question. I assume you agree that this case is not right for us to address claims of ineffective assistance of counsel on direct appeal. I did address the issues in my brief. But I think that in both instances, both as to Mr. Keith and Mr. Lewis, these are better addressed in 2255 because we just don't know what was, at what point Mr. Lewis learned about his sister's representation. And even though she had already removed herself from the case by the time he got on it, we don't know what was said when he found out about it or any of those matters. The record's not developed. It's just not developed. And on Mr. Keith as well. We just don't know what he did and what he didn't do. We don't know whether he felt he had enough time, you know, to prepare for the case or any of those things. So I do think that it's, that it would be more appropriate in 2255. All right. Thank you. If the court has no more questions, I'll just rest on my briefs and ask the court to affirm these convictions and sentences. Thank you. Thank you. Thank you. Mr. Matthews. Your Honor, again, thanks for your time this morning. I do want to, again, ask the harmless error issue, which I certainly understand the court's concern about that. I do think that despite having other evidence of my clients being present at the case, having and had this evidence been allowed, Mr. Ganner would have been able to call a police officer, sit in front of the jury on behalf of Mr. Gerson, and say, yep, he lied in these proceedings. Well, is it true to what Ms. Stewart says about the two supposed previous lies, that it's not altogether clear whether there's been a finding that those were, in fact, lies? Well, Judge, I think the suppression hearing where Judge Borden- That's your better one, right? That's the better one, yes. Yes. Even there, just saying, well, I'm more likely to believe this account than that account is not the same thing as an express finding of perjury or lying under oath, right? Yes. I completely agree with that. I do think it carries a lot more weight as to the- It carries more weight than the other one. And really, the reason I think the other one at least allows us pause to look at it, and I go to the sentencing guidelines where if your defendant client takes the stand, and he says, I didn't do it, and then he gets convicted, what happens? He gets enhanced for lying to the jury. And they say, yeah, he took the stand. They didn't believe him. And it's substantive evidence. I mean, this court treats it as substantive evidence of guilt. So from that standpoint, that's why I say that one has to be considered in this argument. Okay. And as to the bias, I think based on how the court ruled, it wasn't- He wasn't a defendant in that proceeding, right? He was a witness. Just a witness in that case. Just a witness in this case, that's right. That's my understanding. Let me say that. It's a little different too. Yes, it is. But as to how the court presented the arguments on the motion in Lemony, taking a break, coming back and issuing a ruling, I certainly understand the court's evaluation of it maybe not being developed enough at the lower court level. I certainly think it's a situation that the court should look at, and hopefully will rule in Mr. Grossi's favor for that and the other reasons. Thank you. Do you have anything more for us? Thank you. We have your case, and we'll move to the last one for the day. Green versus Gray. You are excused. Yes. No, you have to stay. I'm just kidding. I'm teasing. You're free. You're free to stay if you like, but you don't have to. But I do want to note for the record that you were both court appointed, and we appreciate your willingness to accept the appointment and your service to the court. Thank you very much.